**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | Criminal Case No. CR-19-00073-002-RAW |
| v. | ) | |
| | ) | Civil Case No. CV-24-359-RAW |
| JOSE MIGUEL PACHECO, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

## ORDER

Now before the court is the *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("motion") filed by Defendant Jose Miguel Pacheco ("Defendant"). [CR Doc. 1612; CV Doc. 1]. The Government filed an objection to Defendant's motion. [CR Doc. 1653]. Defendant did not file a reply. This matter is ripe for ruling.

The Tenth Circuit Court of Appeals, in an order and judgment filed on February 13, 2024, provided the following summary of this case:

> In September 2019, a federal grand jury returned a twenty-five-count indictment charging twenty-nine defendants with conspiracy to distribute methamphetamine and heroin, among other charges, in the Eastern District of Oklahoma. Defendant was named in seven counts. The Government alleged that Enrique Pacheco, Defendant's cousin, operated a large-scale drug trafficking organization from his cell in the Oklahoma State Penitentiary while serving a life sentence for first-degree murder. Enrique Pacheco used a contraband cell phone to communicate with drug suppliers in Mexico, his distribution network, and family members involved in the operation. The Government identified Defendant as a distributor of Enrique Pacheco's methamphetamine in Muskogee, Oklahoma . . . .
>
> The Government's primary evidence against Defendant comes from three traffic stops and a series of interviews with his coconspirators. First, in September 2018, Muskogee police attempted to stop Defendant for a traffic violation. Defendant led police on a short pursuit before pulling over. Police arrested him and recovered 1.92 grams of heroin, 28.25 grams of methamphetamine, and $1,150 cash. In November 2018, Defendant led Fort Gibson Police on a 100-mile-per-hour high speed pursuit. Defendant eventually drove through a fence and into a pasture where he was forced to stop. He fled on foot while police interrogated his female passenger, Krystal Mayen. She identified Defendant as the driver. Police retraced Defendant's flight

path and discovered that he discarded 152.35 grams of methamphetamine, 7.38 grams of heroin, 13.71 grams of cocaine, .3 grams of marijuana, 97 Xanax tablets, and 5 Oxycodone tablets. This arrest formed the factual basis for Count Five of the indictment, to which Defendant pleaded guilty. Finally, in April 2019, Defendant led Muskogee police on a third pursuit, this time driving through two police roadblocks. Defendant and his seventeen-year-old passenger Lannie Jo Carter discarded multiple bags out of the car's windows as they drove. Defendant eventually stopped in a field and police forcibly detained him. Officers recovered $772 cash, a Mossberg rifle with ammunition, and 8.54 grams of heroin. Carter later told police they discarded four firearms during the pursuit. Carter also said Defendant instructed her to tell police the Mossberg rifle belonged to her.

Defendant's coconspirators provided information about his alleged role in the drug trafficking organization in formal interviews with the Government. At sentencing, the Government used information from the interviews to estimate the drug quantities Defendant was responsible for distributing:

• Codefendant Krystal Mayen told investigators she traveled to Oklahoma City with Defendant on five separate occasions for Defendant to purchase methamphetamine from suppliers at the direction of Enrique Pacheco. Mayen also disclosed that she purchased methamphetamine for Defendant from the same suppliers.

• Codefendant Lannie Jo Carter advised she worked with the organization beginning in November 2018. She told investigators she went with Defendant to pick up methamphetamine in Oklahoma City three to four times per week from suppliers named "Primo" and "Tony." She advised Defendant bought one pound to multi-pound quantities each time and redistributed it in ounce to multi-ounce quantities to his own and Enrique Pacheco's customers. The Government attributed 48 ounces of methamphetamine to Defendant based on his purchases in Oklahoma City with Carter.

• Codefendant Shaina Johnson, Mayen's stepsister, corroborated Mayen and Carter's statements that Defendant always purchased multi-pound amounts of methamphetamine from suppliers. Johnson also admitted to working for Enrique Pacheco.

• Jordan Brown, Enrique Pacheco's former brother-in-law, told investigators he used to distribute methamphetamine for Enrique Pacheco. Brown advised he began purchasing one-ounce quantities of methamphetamine from Defendant in early 2018 while completing a six-month drug rehab program. After rehab, Brown bought three to four ounces per day from Defendant until Brown's arrest in October 2018. When Brown was released from jail in November 2018, he received three to four half-pounds of methamphetamine from Defendant. The Government attributed 193 ounces of methamphetamine to Defendant based on these distributions to Brown.

2

• Codefendant Feather Pacheco, Jordan Brown's girlfriend, corroborated Brown's statements. She told investigators they traveled to Muskogee two to three times per week in 2018 to pick up between 4 and 24 ounces of methamphetamine from Defendant. She recalled purchasing 16 ounces on three specific occasions. The Government attributed 76 ounces of methamphetamine to Defendant based on these distributions.

• Codefendant Tabitha Bryant told investigators she bought one ounce of methamphetamine from Defendant four to five times in 2019. The Government attributed four ounces of methamphetamine to Defendant.

*United States v. Pacheco*, No. 22-7062, 2024 WL 561927, at *1-2 (10th Cir. Feb. 13, 2024) (unpublished).  [CR Doc. 1572 at 2-5].

On July 6, 2021, Defendant appeared in person, and with appointed counsel, Mr. Heath Hyde, at the change of plea hearing.  [CR Doc. 1098].  Defendant pleaded guilty without a plea agreement to Count Five of the Indictment, possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2.  In exchange, the Government agreed to dismiss the remaining six counts against Defendant.

The United States Probation Office prepared a presentence investigation report ("PSR"). Mr. Hyde objected to numerous paragraphs within the PSR, and the Government responded in opposition to each of Mr. Hyde's objections.  [CR Docs. 1381 and 1430].  The probation office provided a response to the objections, and a final PSR was filed on September 9, 2022.  [CR Doc. 1432].  The PSR noted that the minimum term of imprisonment on the count was 5 years and the maximum term was 40 years.  PSR at ¶ 97.  The PSR further noted that, based upon a total offense level of 39 and a criminal history category of III, the guideline imprisonment range was 324 months to 405 months.  *Id*. at ¶ 98.

Prior to sentencing, Mr. Hyde filed a sentencing memorandum/motion for downward variance.  [CR Doc. 1454].  Mr. Hyde asked the court "to take into consideration [Defendant's] tough upbringing when deciding his future."  *Id*. at 1.  Mr. Hyde argued in part that Defendant "was introduced to drugs at an early age, and that has been a constant in his life ever since."  *Id*. Counsel further asserted that Defendant "is personable and likeable, and with the right guidance, [counsel] believe[s] he could be a contributor to society, if the constant of drugs can be removed from his life."  *Id*.  He alleged that "[t]he constant drug use resulted in a drug trade in order to

3

support [Defendant's] own habit and those he wanted to be around him." *Id*. Mr. Hyde also reiterated his objections to the PSR, alleging "that the amount of 'ghost' dope described by the witnesses is not consistent with the amounts on [Defendant] when he was arrested." *Id*. Pointing to the evidence, counsel requested that the court "reduce the sentence consistent with the drug amounts [Defendant] was caught with and sentence him accordingly to these amounts and his criminal background." *Id*. at 2.

Defendant appeared with counsel for sentencing on November 28, 2022.[1] [CR Doc. 1458 at 1]. The court considered the arguments of counsel. *Id*. Objections numbered one, two, three, four, five, and seven to the PSR were overruled, and objection numbered six was resolved. *Id*. The court found the PSR would form the factual basis for the court's sentence. *Id*. Defendant's motion for variance was denied. *Id*. Defendant was sentenced to a term of 274 months of imprisonment on Count Five of the Indictment.[2] *Id*. at 2. Counts One, Three, Four, Six, Seven, and Eleven of the Indictment were dismissed. [CR Doc. 1459]. Judgment was entered on November 29, 2022. [CR Doc. 1462].

A letter from Defendant, construed as a notice of appeal, was filed on December 12, 2022. [CR Doc. 1490]. Defendant asserted on appeal that "the district court committed two procedural errors: relying on the coconspirator statements to increase his drug quantity; and applying the § 3B1.1(a) organizer/leader sentencing enhancement." *United States v. Pacheco*, 2024 WL 561927, at *3. Defendant also argued that his 274-month sentence was "substantively unreasonable in length." *Id*. The Tenth Circuit concluded that Defendant's sentence was

---

[1]    Defendant filed a pro se motion for appointment of new counsel on August 15, 2022. [CR Doc. 1404]. At the beginning of the sentencing hearing, the undersigned explained to Mr. Hyde that "I need to rule on that [pro se motion for appointment of new counsel] unless you've ironed out your issues with Mr. Pacheco." [CR Doc. 1511 at 2]. Mr. Hyde informed the court that he and Defendant "met numerous times since that letter, and [he] met with him again today, and then [he] also met with him about ten -- ten days ago to concur that [Defendant] did want to withdraw that and wanted [Mr. Hyde] to continue as counsel. And since that time and before then, even, [Mr. Hyde and Defendant] had continued to work on the case." *Id*. The undersigned then specifically asked Defendant, "Is that correct, Mr. Pacheco?" *Id*. Defendant responded, "Yeah, it is." *Id*. at 3. The pro se motion for appointment of new counsel [CR Doc. 1404] was deemed withdrawn and the court moved forward with Defendant's sentencing. [CR Doc. 1458].

[2]    Defendant also had numerous charges pending in state court at the time he was sentenced for his federal crime: State of Oklahoma, Muskogee County Case Nos. (1) CF-2018-724; (2) CF-2018-904; (3) CM-2018-918; and (4) CF-2019-275. PSR at ¶¶ 79-82.

procedurally and substantively reasonable and affirmed the district court's imposition of sentence. *Id*. at *5.

Defendant § 2255 motion was timely filed on September 30, 2024. In the motion, Defendant asserts four grounds for relief.

*Grounds One, Two, and Three*.

Defendant's first three grounds mirror the arguments that Defendant asserted on appeal. In Ground One, Defendant complains about the organizer/leader sentencing enhancement. [CR Doc. 1612 at 4]. In Ground Two, Defendant contends that his 274-month sentence is too long. *Id*. at 5. In Ground Three, Defendant complains that the court relied on the coconspirator statements to increase his drug quantity. *Id*. at 7.

In response, the Government notes that "[t]he first three grounds alleged in Defendant's Motion are the exact three grounds rejected in his direct appeal and are procedurally barred." [CR Doc. 1653 at 5]. The court agrees with the Government. "Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255." *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989) (citing *United States v. Nolan,* 571 F.2d 528, 530 (10th Cir. 1978)). Defendant does not identify any intervening change in law since his direct appeal was decided. As such, Grounds One, Two, and Three are procedurally barred.

*Ground Four*.

Defendant argues in Ground Four that his attorney was ineffective for failing to "argue anything" on his behalf. [CR Doc. 1612 at 8]. He alleges that his codefendants were lying, and that he told his attorney that he was innocent.[3] *Id*.

---

[3]     Defendant specifically contends that he told Mr. Hyde when he pled guilty "that [he] was innocent on that count that [he] pled to" and that he "beat that state count." [CR Doc. 1612 at 8]. The court is mindful that Defendant's change of plea hearing was on July 6, 2021, and he was sentenced by the undersigned on November 28, 2022. The State of Oklahoma dismissed Muskogee County Case No. CF-2018-904 on March 28, 2024.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687. Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted). With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

The Government claims in response that "Defendant makes a nebulous assertion that Mr. Hyde provided ineffective assistance of counsel." [CR Doc. 1653 at 8]. The Government contends that "Defendant's conclusory claim is unsubstantiated by the record and fails to meet the standard of ineffective assistance of counsel set forth in *Strickland*." *Id*. The Government further contends that "Mr. Hyde clearly advocated for his client at the appropriate junctures." *Id*. at 9. The court agrees with the Government.

Defendant's ineffective assistance of counsel claim is undermined by his sworn testimony before the Honorable Steven P. Shreder at the change of plea hearing.[4] Judge Shreder asked Defendant if he could read, write and understand the English language, and he responded, "Yeah."[5] [CR Doc. 1510 at 3]. Judge Shreder noted that Defendant did not appear to be under the influence of any drugs or alcohol. *Id*. Further, to make sure the record was clear, Judge Shreder specifically asked Defendant if he was currently under the influence of any drugs or alcohol, and he replied, "No." *Id*. at 3-4. Defendant testified that he was not taking any prescription medications. *Id*. at 4. He denied ever being confined in a hospital for mental care or mental observation and denied having been treated by a doctor for mental illness. *Id*.

Judge Shreder asked Mr. Hyde if he had any reason to believe that his client was not mentally competent to understand and appreciate the charges against him, and the nature, purpose and consequences of this proceeding and to assist [counsel] in presenting any defense that he may have to the charge. *Id*. Mr. Hyde answered in the negative. *Id*. Based upon the responses of Defendant, his counsel and the observations of the court, Judge Shreder found Defendant was mentally competent to understand and appreciate the charges against him and the nature and consequences of the proceeding. *Id*.

Defendant affirmed that he wished to waive or give up his right to a jury trial and enter a plea before the court. *Id*. at 4-5. Counsel for the Government noted that Defendant was pleading guilty to Count Five of the Indictment and further stated the nature of the charge against Defendant and the range of punishment. *Id*. at 5. Defendant affirmed that he heard the announcement of the charge against him, and affirmed that he understood both the charge against him and the punishment for the charge. *Id*. Judge Shreder specifically informed the Defendant "that Count Five is punishable by a term of imprisonment of not less five nor more than 40 years . . . ." *Id*. Counsel for the Government thereafter noted that the preliminary advisory guideline range was 210 months to 262 months of imprisonment, and defense counsel disagreed with the estimate. *Id*.

---

[4] "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

[5] The PSR shows Defendant "completed his GED in 2013 while incarcerated." PSR at ¶ 94.

at 6-7. Judge Shreder specifically asked Defendant if he understood "that the sentencing judge has to take into consideration what the guidelines are at the time of your sentencing, but he doesn't necessarily have to follow them," and Defendant replied, "Yeah." *Id*. at 7. In addition, Judge Shreder specifically asked Defendant if he understood "that it is possible that he'll give you a longer sentence than what either one of them [counsel] are predicting," and Defendant replied, "Yeah." *Id*. at 8. Defendant affirmed that he was ready to enter a plea at that time, and he pleaded guilty to Count Five. *Id*.

Defendant affirmed that he had told his attorney everything he knew about the charge against him, and that Defendant believed his attorney was fully informed on all these matters. *Id*.

Judge Shreder informed Defendant that "[b]efore I can accept your guilty plea, I have to ask you some questions to ensure it's voluntary." *Id*. Defendant was then asked if he understood that he had a right to a jury trial and that only he could waive or give up that right. *Id*. at 8-9. Defendant answered in the affirmative. *Id*. at 9. Defendant was also asked if he understood that he had the right to plead not guilty to any offense charged against him, and Defendant answered in the affirmative. *Id*.

Defendant was specifically asked if he understood that if he pleaded guilty, he would be giving up his right to a trial and there would be no further trial of any kind either before a court or a jury. *Id*. at 10. He answered in the affirmative. *Id*.

Notably, Defendant was asked if his plea of guilty was made voluntarily and completely of his own free choice. *Id*. at 12. Defendant responded, "Yeah." *Id*. Defendant was asked if he had been forced or threatened in any way or promised anything by any person to plead guilty. *Id*. Defendant stated, "No." *Id*. Defendant was asked if his plea of guilty was the result of a plea agreement between himself, his attorney, and the United States attorney, and Defendant stated, "No." *Id*. at 13.

Defendant was asked if he was satisfied with the services of his attorney, and Defendant flatly replied, "Yes." *Id*. Defendant was also asked if he believed that counsel had done all that anyone could do as counsel to assist him in this case. *Id*. Again, Defendant replied, "Yes." *Id*.

The court noted that Defendant and counsel had signed the waiver of jury form, and Defendant denied having any questions about waiving his right to a jury trial. *Id*. at 13-14. Judge Shreder then asked the following question: "I want to ask you again, understanding the nature of the charges against you and the effect and consequences of your plea, how do you plead, guilty or not guilty?" *Id*. at 14. Defendant conferred with counsel, and Defendant responded, "Guilty." *Id*. Defendant then answered questions relating to the elements of Count Five. *Id*. at 14-16.

Defense counsel was asked if he had any reason to believe that the Defendant was not mentally competent to understand and appreciate the nature, purpose and consequences of his actions at the time they were committed, out of which the charge contained in the Indictment arose. *Id*. at 16. Mr. Hyde replied, "No, your Honor." *Id*.

At the end of the change of plea hearing, Judge Shreder found that Defendant was mentally competent to understand and appreciate the acts he committed on or about the date alleged in the Indictment, and to realize the nature, purpose, and consequences of those acts at the time they were committed. *Id*. Judge Shreder was satisfied that the Defendant was fully aware of what he was doing, and that he was knowingly, intelligently, and willfully waiving his right to a trial and pleading guilty. *Id*. Based on his admissions, his demeanor, and his clear and responsive answers to his questions, Judge Shreder found that there was a factual basis for Defendant's plea of guilty, and that his plea of guilty was made voluntarily, with his understanding of the charges against him, and with the knowledge of the consequences of his plea. *Id*. The court accepted Defendant's plea of guilty and found that he was guilty of Count Five of the Indictment. *Id*. at 16-17. At no point did Defendant raise complaints about Mr. Hyde at the change of plea hearing. Nor did Defendant allege that his codefendants were lying or that he was innocent.

Defendant's claim that his attorney failed to "argue anything" on his behalf is unsubstantiated by the record. As noted above, Mr. Hyde lodged numerous objections to the PSR, and he filed a sentencing memorandum/motion for downward variance. In addition, he advocated on Defendant's behalf at the sentencing hearing. The Government also points out that:

> Mr. Hyde's efforts yielded positive results for Defendant. While the PSR calculated Defendant's offense level as 39 with a guideline range of 324-405 months, by the time Defendant was sentenced this Court had reduced his offense level to 37 with a reduced guideline range of 262-327 months. (*Statement of Reasons*, Doc. #1463

at 1). Counsel's efforts directly led to a 274[-]month sentence – an amount on the low end of the reduced guideline and some 50 months below the bottom of the original guideline range. The record in this case clearly establishes counsel acted in a reasonably professional manner throughout his representation of Defendant.

[CR Doc. 1653 at 9].  Once more, the undersigned agrees with the Government.

Defendant has not established that his counsel's performance fell below an objective standard of reasonableness, and the court need not address whether the ineffective assistance claim would also fail under *Strickland*'s prejudice prong.  Defendant's claim of ineffective assistance of counsel in Ground Four must be denied.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  When a district court denies a § 2255 motion on procedural grounds without reaching the merits of a defendant's claims, a certificate of appealability should issue when a defendant "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  Upon consideration, this court finds that the standard has not been satisfied.  This court hereby declines to issue a certificate of appealability.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 1612; CV Doc. 1] is hereby DENIED.[6]  Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.

It is so ordered this 6th day of April, 2026.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

---

[6]     The motion, files and records of this case conclusively show that Defendant is entitled to no relief.  Thus, no evidentiary hearing was held.